**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**KROZ, LLC d/b/a SUPERIOR**
**CRUISE AND TRAVEL, a**
**Commonwealth of Pennsylvania**
**limited liability company, KEITH**
**TAYLOR, an individual, and**
**ROSALIND SMITH, an individual,**

       **Plaintiffs,**

**v.**

**FREDERICK AVERY, an individual,**
**JENNIFER AVERY, an individual,**
**DANIEL RICHARD, an individual,**
**MARK RICHARD, an individual, and**
**GOAT VACATIONS, LLC, a Florida**
**limited liability company,**

       **Defendants.**

_____/

**CASE NO.: _____**

**PLAINTIFFS' VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL,**
**INJUNCTIVE RELIEF REQUESTED**

Plaintiffs KROZ, LLC d/b/a Superior Cruise and Travel ("KROZ"), Keith Taylor, and

Rosalind Smith (collectively, "Plaintiffs"), file this Verified Complaint against Defendants

Frederick Avery, ("Mr. Avery"), Jennifer Avery ("Mrs. Avery"), Daniel Richard ("Daniel"),

Mark Richard ("Mark") and GOAT Vacations, LLC ("GOAT") (collectively, the

"Defendants"), and in support thereof avers as follows:

1

## NATURE OF THE CASE

1.      This case involves a concerted, unlawful conspiracy by Defendants to fraudulently induce Plaintiffs to purchase a travel agency and then raid the agency of its confidential information, trade secrets, talent, customer relationships, and goodwill.

2.      This is a claim for fraudulent inducement, unfair competition, and breach of contract, tortious interference with contractual relations, misappropriation of trade secrets, unfair competition, and conspiracy.

3.      Plaintiffs seek an Order of the Court preliminarily and permanently enjoining Defendants from unfairly and unlawfully competing with Plaintiffs' business.

4.      Plaintiffs have suffered irreparable harm and has no adequate remedy at law, as detailed below.

5.      In addition, Plaintiffs seek an award of monetary damages, interest and attorney's fees.

## PARTIES

6.      KROZ is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business located at 31 Whitetail Drive, Chadds Ford, PA 19317.

7.      The members of KROZ are Mr. Taylor and Ms. Smith.

8.      Mr. Taylor is a citizen and resident of the Commonwealth of Pennsylvania, residing at 1718 Clinton Drive, Ambler PA 19002.

9.      Ms. Smith is a citizen of the Commonwealth of Pennsylvania, residing at of 31 Whitetail Drive, Chadds Ford, PA 19317.

10.     Defendant Frederick Avery is a citizen and resident of the State of Maine, residing at 871 Morrills Mill Road, North Berwick, ME 03906.

11.     Defendant Jennifer Avery is a citizen and resident of the State of Maine, residing at 371 Morrills Mill Road, North Berwick, ME 03906.

12.     Mr. and Mrs. Avery own a home in the State of Florida at 720 Celebration Avenue, Unit 210, Celebration, FL 34747.

13.     Defendant Daniel Richard is a citizen and resident of the State of Florida, residing at 10641 Ralph Drive, Clermont, FL 34711

14.     Defendant Mark Richard is a citizen and resident of the State of Florida, residing at 1735 Lakeside Drive, Davenport, FL 33837.

15.     Defendant GOAT Vacations a limited liability company organized and existing under the laws of the State of Florida, with a principal place of business located at 720 Celebration Avenue, Unit 210, Celebration, FL 34747.

16.     The members of GOAT are Mrs. Avery, Mark Richard ("Mark"), and Daniel Richard ("Daniel").

## **JURISDICTION AND VENUE**

17.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties.  KROZ, Mr. Taylor, and Ms. Smith are citizens of a deferent state from any of the Defendants, and the amount in controversy, to the extent measured and calculable by monetary damages, exceeds the sum or value of $75,000, exclusive of interest and costs.

18.     This Court has supplemental jurisdiction, pursuant to 28 USC § 1367, over any

of Plaintiffs' claims arising under state law.

19.     This Court has personal jurisdiction over Defendants because they reside in this

state and in this district, and committed and/or contributed, in this state and in this district, to

the unlawful acts as alleged in this complaint.

20.     Venue is proper in this district under 28 USC § 1391 because a substantial part

of the acts complained of occurred in this district, Defendants reside in this district.

## FACTS SUPPORTING VERIFIED COMPLAINT

### Mr. Taylor and Ms. Smith set out on a joint-venture.

21.     Mr. Taylor is an entrepreneur and businessman.  He is the founder and owner

of K&B Couriers LLC, which is a medical courier service in Horsham, Pennsylvania.

22.     Ms. Smith is an experienced travel agent with nearly thirty years of experience

in the travel, tourism, and hospitality industry.

23.     Mr. Taylor utilized Ms. Smith's travel agent services for many years.  He was

impressed with her skills, work-ethic, and vast knowledge of the travel industry.

24.     After several discussions in February 2019, Mr. Taylor and Mr. Smith

determined to engage in a joint-venture to operate an excellent travel agent business.  They

agreed that Mr. Taylor would provide his business acumen and entrepreneurial skills and Ms.

Smith would bring her travel and tourism expertise to the table to operate a successful business.

25.     Mr. Taylor and Ms. Smith agreed that it would be advantageous to purchase an

existing travel agency rather than start from scratch.  This way, the new business would have

a head-start with existing independent agents ("IC's"), attracting new IC's, existing customers,

and attracting new customers because it would be working with an established name and reputation.

26.     Ms. Smith was tasked with evaluating target companies and compiled a list of potential opportunities that fit the correct profile of size, operation, name recognition, and reputation.

**Ms. Smith approaches Mr. Avery regarding Superior Cruise.**

27.     At the top of Ms. Smith's list of potential targets was Superior Cruise and Travel, LLC ("Superior Cruise").

28.     Ms. Smith and Mr. Taylor were interested in Superior Cruise because it had an excellent reputation in the travel industry.  The company also appeared to be the correct size operation to fit in the necessary acquisition profile.

29.     Also interesting was the fact that Superior Cruise had been previously listed for sale.  While the listing was no longer active, it did include a telephone number to contact for additional information.

30.     Using this telephone number, on July 19, 2019, Ms. Smith reached out to Mr. Avery, the owner of Superior Cruise, to discuss the potential acquisition of the company.

31.     During discussions with Ms. Smith, Mr. Avery disclosed that he was only responsible for 20% of Superior Cruise's bookings.  The other 80% was booked by IC's.

32.     This sort of arrangement with IC's was exactly what Ms. Smith and Mr. Taylor had in mind to launch their travel business.  Thus, they were very interested in the possibility of purchasing Superior Cruise.

33. Mr. Avery initially declined their advances and explained that he was not interested in selling the business.

34. After Mr. Avery's rejection, Ms. Smith and Mr. Taylor disappointingly resumed discussions with other targets.

35. However, on or about August 9, 2019, Mr. Avery contacted Ms. Smith to rekindle the discussion.

36. Mr. Avery explained that his father just passed away and that he was now interested in selling Superior Cruise.

37. He further revealed that he was looking to exit the travel industry and focus on assisting his wife, Mrs. Avery, launch her interior design business.

38. Ms. Smith and Mr. Taylor, were excited to begin evaluating the real possibility of purchasing Superior Cruise from Mr. Avery.

**Ms. Smith and Mr. Taylor engage in due diligence.**

39. Beginning in early August 2019, Mr. Taylor and Ms. Smith engaged in a due diligence review of Superior Cruise.

40. On or about August 12, 2019, Ms. Smith requested Mr. Avery send all financial documents and tax returns for Superior Cruise from the past three years.

41. Days later, Mr. Avery provided profit and loss statements for Superior Cruise. However, he declined to send the tax returns electronically.

42. On or about August 28, 2019, Mr. Avery provided Ms. Smith with Superior Cruise's W-2 documents, 1099 documents, merchant statements, and other relevant company information.

43.     Ms. Smith and Mr. Taylor were pleased with the information received concerning Superior Cruise because the company appeared to exactly fit their requirements.

44.     Superior Cruise not only had an excellent reputation, its business model made sense because it was based on paying independent contractor travel agents ("IC's) a commission when the commissions were collected by the company.

45.     Among these IC's were Mark and Daniel.

46.     Thus, Superior Cruise controlled the commissions rather than the travel supplier.  This allowed the company to have nearly zero receivables.

47.     This business model combined with Superior Cruise's loyal team of six IC's was a very exciting opportunity for Ms. Smith and Mr. Taylor.

48.     However, one aspect of Superior Cruise was not acceptable for Ms. Smith and Mr. Taylor.  Rather than paying the IC's commissions on completed sales, Superior Cruise was paying a regular "draw" to the IC's.

49.     Because the IC's were 1099 independent contractors, this "draw" could be construed as a salary and require taxes and other withholdings.

50.     Mr. Taylor and Ms. Smith were well aware that this potentially unlawful arrangement must be changed immediately if they eventually purchased Superior Cruise.

51.     Still, based on their review of these documents, Mr. Taylor and Ms. Smith agreed that they wanted to continue discussions with Mr. Avery regarding purchasing Superior Cruise.

52.     Therefore, on September 5, 2019, Ms. Smith and Mr. Avery signed a letter of intent concerning the purchase of Superior Cruise.  *See* Exhibit A

53.     According to the letter of intent, Mr. Avery intended to sell all of Superior Cruise's "tangible assets including inventory, accounts receivable, accrued net profit (YTD $390,000), equipment, assumed contracts, computers, databases, social media accounts, intellectual properties and software as well as any other goodwill related to the business." *See Id.*

54.     Indeed, Mr. Avery was very pleased that Ms. Smith and Mr. Taylor were moving forward with the acquisition.  He specifically commented that he was happy to know that they would take good care of Superior Cruise's team of loyal IC's, including Daniel, Mark, and Mark's wife, Erica Richard ("Erica").

55.     Daniel and Mark are both experienced IC's and appeared to produce a high-level of sales.

56.     Erica was a particular asset as she is bilingual (fluent in Spanish).

57.     Following the letter of intent, in early September 2019, Ms. Smith and Mr. Avery engaged in a lengthy discussion concerning Superior Cruise's sales number for August 2019.

58.     Despite the letter of intent and ongoing discussions with Mr. Taylor and Ms. Smith, Mr. Avery still refused to send Superior Cruise's tax returns due to concerns related to identity theft and exposing his and his family members' social security numbers as listed on the tax returns.

59.     Ms. Smith attempted to alleviate Mr. Avery's concerns by inviting him to Philadelphia, Pennsylvania for an in-person review of the tax returns, but Mr. Avery declined

this invitation.  To expedite the process, Ms. Smith traveled to Boston, Massachusetts to meet with Mr. Avery and review the Superior Cruise tax returns in person.

60.     Satisfied after their extensive review of Superior Cruise's financial documents, performance, and team of IC's, Mr. Taylor and Ms. Smith agreed to move forward and complete the purchase of the company from Mr. Avery.

**Mr. Taylor and Ms. Smith purchase Superior Cruise
and execute the Asset Purchase Agreement.**

61.     On November 14, 2019, Mr. Taylor, Ms. Smith, and Mr. Avery executed the Asset Purchase Agreement (the "APA") whereby Mr. Taylor and Ms. Smith will purchase Superior Cruise from Mr. Avery.  *See* APA, Exhibit B.

62.     According to the APA, Mr. Taylor and Ms. Smith agreed to purchase the assets of Superior Cruise from Mr. Avery.  *See Id.* §2.1.

63.     The Purchased Assets includes, *inter alia*, all contracts, employment agreements with the IC's, customer contracts, customer lists, licenses, intellectual property, internet domain names, websites, and e-mail accounts.  *See Id.*

64.     The e-mail accounts specifically included (but are not limited to) "info@superiorcruiseandtravel.com" and "fred@superiorcruiseandtravel.com".  *See Id.*

65.     The parties agreed that Mr. Taylor and Ms. Smith would pay Mr. Avery a total of $425,000.00 for Superior Cruise.  *See Id.*, § 3.1.

66.     The purchase price was to be paid in two installments of $212,500.00 with the first installment to be paid at the closing, and the second sixty days after the closing on January 15, 2020.  *See Id.*

67.     Mr. Avery agreed that he would not compete with Superior Cruise for a period of five years:

> Non-Competition.  Owner and Seller expressly acknowledge and agree that, for a period of five (5) years following the Effective Date (the "Restricted Period"), Owner and Seller will not, directly or indirectly, individually or with or through others, provide services to, accept employment with, be a consultant or advisor to, form, lend financial support to, own any interest in (other than shares of a publicly traded company that represent less than 1% of the outstanding shares) or otherwise enter into any arrangement with, or engage in any activity with any other person, entity or business in competition with the Company and/or the Business.  Notwithstanding the foregoing, Owner may, upon mutually agreeable terms to be determined by and between the parties, become an independent contractor for Buyer during the Restricted Period.

> *See Id.* § 7.1.

68.     Mr. Avery was free to work with the new Superior Cruise if both parties so desired.

69.     Mr. Avery further agreed to a non-solicitation provision in the APA:

> Non-Solicitation. Owner and Seller expressly acknowledge and agree that, during the Restricted Period, Owner and Seller will not: (a) induce or attempt to induce any existing manager, employee, independent contractor, consultant, agent or affiliate of the Company to sever any Contract or employment agreement identified on the attached Schedule "A"; (b) divert or attempt to divert any of the Company's existing or Buyer's future clients or customers; (c) interfere with or disrupt any of the Company's existing or Buyer's future contractual relationships with business partners, vendors, suppliers, financial institutions or distributors; (d) solicit, entice, or hire away any manager, employee independent contractor, consultant, agent or affiliate of Buyer and/or the Business; or (e) initiate or engage in communications with any existing or pre-Closing customer, client, manager, employee, independent contractor, consultant, agent or affiliate of the Company and/or the Business without the prior written consent of Buyer.

> *See Id.* § 7.2.

70.     The APA was fully executed on November 14, 2019, and the acquisition closed the following day and the first payment of $215,500.00 was wired to Mr. Avery.

**Mr. Taylor and Ms. Smith begin operating Superior Cruise.**

71.     Immediately after the closing, Mr. Taylor and Ms. Smith began operating Superior Cruise.

72.     As planned, on November 22, 2019, Ms. Smith and Mr. Taylor ended the potentially unlawful practice of paying IC's a "draw" salary.  Rather than a salary, going forward, the IC's would be paid based on the commissions received for the sales made by the IC's.

73.     Early on, Ms. Smith observed that the calls and sales volume at Superior Cruise were below the expectations based on the due diligence review.  Given the Thanksgiving holiday, she determined to continue to observe the sales traffic as it was expected to improve during early December.

74.     This improvement did not materialize.  Rather, one of Superior Cruise IC's immediately ended her relationship with Superior Cruise.

75.     This further decreased the sales and revenue of the new company.

76.     Indeed, even Mark and Daniel, some of Superior Cruise's top IC's, saw a sharp decline in revenue for the company.

77.     Erica's sales were basically non-existent.

78.     Erica worked most days as she often confirmed her work schedule, she took very few calls and produced basically zero revenue for Superior Cruise.

**Mr. Taylor and Ms. Smith seeks an extension on the second payment.**

79.     Due to the struggles Mr. Taylor and Ms. Smith were experiencing with Superior Cruise, on or about December 10, 2019, they reached out to Mr. Avery to discuss an extension on the second payment.

80.     Mr. Taylor and Ms. Smith repeatedly stressed to Mr. Avery that they were not interested in lowering the payment, but rather only wished to obtain more time to ensure a smooth transition as specifically discussed in the APA.

81.     Following several conversations, on or about December, 17, 2019, Mr. Avery agreed to extend the payment day to February 15, 2020.

82.     However, the next day, he rescinded the extension and demanded to be paid according to the APA.  Mr. Avery explained that his wife "doesn't understand" and that they have nothing to gain by granting the extension.

83.     Shortly thereafter, Ms. Smith wrote to Mr. Avery and again requested an extension to the final payment.  *See* Exhibit C.

84.     She reminded Mr. Avery that that the transition had been very difficult, in part because Mr. Avery was paying the IC's the potentially unlawful "draw."  Further, she informed Mr. Avery that the practice could subject Plaintiffs to liability due to the statute of limitations for such Internal Revenue Service violations.  *See Id.*

85.     Rather than respond, Mr. Avery, for the first time in this transaction, engaged counsel to discuss the extension with Ms. Smith and Mr. Taylor.

86.     Eventually, the parties reach a settlement agreement whereby Mr. Taylor and Ms. Smith released Mr. Avery from any claims related to the improper payment of the IC's

and Mr. Avery granted an extension of the final payment until March 15, 2020. *See* Settlement Agreement, Exhibit D.

### **Mrs. Avery exposes Defendants' fraudulent and tortious scheme.**

87.     With the extension, Mr. Taylor and Ms. Smith were determined to make Superior Cruise successful and launched several new initiatives, including new advertising and an improved customer relationship management software.

88.     During this time, on February 19, 2019, Ms. Smith received an e-mail concerning a LegalZoom "compliance reminder" for an entity known as "GOAT Vacations, LLC." *See* Exhibit E.

89.     Ms. Smith initially thought that this e-mail was misdirected or an advertisement so she replied to be removed from the mailing list.

90.     However, upon closer inspection a few days later, Ms. Smith saw that the e-mail was sent to "fred@superiorcruiseandtravel.com" and sent by Mrs. Avery. *See Id.*

91.     The "fred@superiorcruiseandtravel.com" was Mr. Avery's e-mail address when he operated Superior Cruise and was now set to forward to Ms. Smith's e-mail account. This e-mail address and account was sold to Ms. Smith and Mr. Taylor as part of the APA. *See* APA, § 2.1(i), Exhibit B.

92.     Ms. Smith began researching GOAT Vacations and discovered that the company was a Florida limited liability company founded on November 26, 2019.

93.     The members of this LLC were Mrs. Avery, Mark, and Daniel.

94.     The address of GOAT was listed as "720 Celebration Avenue, Unit 210 Celebration, FL 34747," which is the address of Mr. and Mrs. Avery's Florida residence.

95.     Ms. Smith and Mr. Taylor began investigating everything they could find concerning GOAT and any connection to Mr. Avery.

96.     First, they learned that an internet domain for "www.goatvactions.com" was created on August 30, 2019.  This was prior to the execution of the Letter of Intent.

97.     The GOAT website offers exactly the same services as Superior Cruise and lists "720 Celebration Avenue, Unit 210 Celebration, FL 34747" as the company's address and location.  *See* Exhibit F.

98.     Next, Ms. Smith began reviewing documents in Mr. Avery's former Superior Cruise account.

99.     She learned that Mark had, without any authorization, taken Superior Cruise forms and duplicated them for GOAT.

100.    She was shocked to find that Mr. Avery sent all of Superior Cruise's confidential documents, accounts, passwords, and other crucial company information to Mark on November 15, 2019.

101.    Mr. Avery sent this confidential business information to Mark ***after*** closing on the sale of Superior Cruise to Mr. Taylor and Ms. Smith and ***after*** receiving the initial $215,000 payment.

102.    Indeed, minutes after selling Superior Cruise to Mr. Taylor and Ms. Smith, Mr. Avery sent the company's confidential business information to a competitor.

103.    Neither Mr. Taylor nor Ms. Smith authorized Mr. Avery to send Superior Cruise's documents to any person or entity.

104.    Now, Defendants' fraudulent and tortious scheme became clear.  Mr. Avery never intended on compliance with the non-competition clause of the APA.  Rather, he fraudulently induced Mr. Taylor and Ms. Smith to purchase Superior Cruise based on the misrepresentation and false promise that he would agree to not compete with Superior Cruise.

105.    At the same time, Mr. Avery, Mrs. Avery, Mark, and Daniel conspired to form GOAT and directly compete with Superior Cruise, in specific breach of the APA.

106.    Unbeknownst to Plaintiffs, Mark and Daniel were working with Mr. and Mrs. Avery to form and launch GOAT rather than selling on behalf of Superior Cruise.

107.    Because Mr. Avery, Mark, and Daniel were still ostensibly Superior Cruise IC's, they had access to all of the company's documents, client lists, and other confidential information.

108.    Further, the decline in Mark, Daniel, and Erica's once stellar sales numbers also became clear:  Rather than working and booking for Superior Cruise, they were conspiring with Mr. and Mrs. Avery to launch GOAT and divert customers to the new company in direct competition with Superior Cruise.

109.    During this time, Mark, Daniel, and Erica failed to take calls, failed to follow-up with customers, and failed to book new customers for Superior Cruise.

110.    Upon information and belief, Superior Cruise has lost many customers and potentially thousands of dollars in revenue due to Defendants' unfair completion and conspiracy.

111.    Upon information and belief, Mr. Avery, Mark, and Daniel used their access to Superior Cruise's clients and confidential information to divert potential customers away from Superior Cruise and to GOAT.

112.    GOAT is registered with Cruise Lines International Association ("CLIA"), which allows it to book reservations on cruise lines.  Therefore, Mr. Avery, Mark, and Daniel can use their access to Superior Cruise's confidential information to divert customers away from Superior Cruise and book travel directly for GOAT.

113.    Mrs. Avery, Mark, and Daniel were aware, or should have been aware, of the APA whereby Mr. Avery sold Superior Cruise and expressly agreed not to compete with Superior Cruise and its new owners.

114.    Regardless of this awareness, Mrs. Avery, Mark, and Daniel intentionally interfered with the APA and aided and abetted Mr. Avery's breach of the agreement.

## COUNT I
## BREACH OF CONTRACT – INJUNCTIVE RELIEF
## (Against Frederick Avery)

115.    Plaintiffs repeat and re-allege each of the foregoing paragraphs of the Complaint, inclusive, as if fully set forth at length herein.

116.    The APA is a valid, binding, and enforceable written agreement.  *See* APA, Exhibit B.

117.    Mr. Avery has breached several material provisions of the APA by, *inter alia*:

    a.    Assisting and conspiring with Mrs. Avery, Daniel, and Mark to launch GOAT to compete with Superior Cruise in violation of Section 7.1 of the APA;

    b.    Directly or indirectly, individually or with or through others, providing services to, consulting, advising, forming, lending financial support to, GOAT in competition with Superior Cruise.

     c.     Soliciting Superior Cruise's independent contractors to begin work with GOAT in violation of Section 7.2 of the APA;

     d.     Using Superior Cruise's confidential business information to solicit Superior Cruise's customers in violation of Section 7.2 of the APA; and

     e.     Using Superior Cruise's confidential business information to divert Superior Cruise's customers to GOAT in violation of Section 7.2 of the APA.

118.     As a direct and proximate result of Mr. Avery's various breaches, Plaintiffs suffered irreparable harm through loss of its goodwill and injured relationships with its customers and independent contractors, as well as the misappropriation of its proprietary and confidential business information.

119.     Unless and until Mr. Avery is enjoined from committing the wrongful actions set forth above, Plaintiffs' irreparable harm will continue.

120.     Plaintiffs have no adequate remedy at law.

121.     Mr. Avery expressly agreed in the APA that Plaintiffs are entitled to a preliminary and permanent injunction for violations of Section 7.1 or 7.2 of the APA:

> Remedies. Owner and Seller agree that Buyer does not have any remedy at law adequate to protect the rights and interests set forth in this Section 7 and therefore agrees that Buyer shall have the right to the following: (a) preliminary and permanent injunctive relief to prevent Owner and Seller as well as any manager, employee, independent contractor, consultant, agent or affiliate of Owner, Seller or any business entity associated with either of them from violating any of the provisions of Sections 7.1 and/or 7.2 without the necessity of proving actual damages or posting a bond or other security, and (b) an equitable accounting of all earnings, profits or other benefits arising out of any violation of Sections 7.1 and/or 7.2.

> *See* APA § 7.3, Exhibit B.

122.     Therefore, Plaintiffs are entitled to an order preliminarily and permanently enjoining Mr. Avery from further breaches of Sections 7.1 and 7.2 of the APA.

123.     Mr. Avery is contractually obligated to pay all reasonable costs and expenses, including attorneys' fees and expenses, incurred by Plaintiffs in enforcing the APA, in the event Plaintiffs prevail in this proceeding.  *See* APA §10.2, Exhibit B.

<u>**COUNT II**</u>
**FRAUDULENT INDUCEMENT**
<u>**(Against Fredrick Avery)**</u>

124.     Plaintiffs repeat and re-allege each of the foregoing paragraphs of the Complaint, inclusive, as if fully set forth at length herein.

125.     During the negotiations with Mr. Taylor and Ms. Smith, Mr. Avery represented that he would not directly or indirectly, provide services to, accept employment with, be a consultant or advisor to, form, lend financial support to, own any interest in or engage in any activity with any other person, entity or business in competition with Superior Cruise.

126.     Mr. Avery further represented that he would not induce or attempt to induce any existing manager, employee, independent contractor, consultant, agent or affiliate of Superior Cruise to sever their relationship with the company.

127.     Mr. Avery also represented that he would not divert or attempt to divert any of Superior Cruise's existing or future clients or customers.

128.     Additionally, Mr. Avery represented that he would not solicit, entice, or hire away any Superior Cruise manager or independent contractor.

129.     When Mr. Avery made these representations, he knew them to be false.

130.    Indeed, Mr. Avery made these representations knowing that he did not intend on abiding by his promises to Mr. Taylor and Ms. Smith.

131.    Mr. Avery made these representations with the intention of inducing Mr. Taylor and Ms. Smith to enter into the APA in reliance thereupon.

132.    Mr. Taylor and Ms. Smith did in fact rely upon these representations in entering into the APA.

133.    Mr. Taylor and Ms. Smith's reliance upon these representations was justified under the circumstances.

134.    Mr. Taylor and Ms. Smith were fraudulently induced to enter into the APA.

135.    As a consequence of the foregoing, Mr. Taylor and Ms. Smith are entitled to rescind the APA and recovery damages from Mr. Avery, including punitive damages.

**<u>COUNT III</u>**
**BREACH OF CONTRACT – MONEY DAMAGES**
**<u>(Against Fredrick Avery)</u>**

136.    Plaintiffs repeat and re-allege each of the foregoing paragraphs of the Complaint, inclusive, as if fully set forth at length herein.

137.    Mr. Avery has breached the APA as set forth, *supra*, which is incorporated by reference as if set forth in full herein.

138.    As a direct and proximate result of these breaches of the APA, Plaintiffs have suffered money damages, in an amount to be determined at trial.

139.    Mr. Avery is contractually obligated to pay all reasonable costs and expenses, including attorneys' fees and expenses, incurred by Plaintiffs in enforcing the APA, in the event Plaintiffs prevail in this proceeding.  *See* APA §10.2, Exhibit B.

## COUNT IV
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
### (Against Jennifer Avery, Daniel Richard, & Mark Richard

140.     Plaintiffs repeat and re-allege each of the foregoing paragraphs of the Complaint, inclusive, as if fully set forth at length herein.

141.     Mrs. Avery, Daniel, and Mark have tortuously interfered with Plaintiffs' contractual relationship with Mr. Avery.

142.     During the Restrictive Period of the APA, Mrs. Avery, Daniel, and Mark, were working together with Mr. Avery on the Defendants' coordinated launch of GOAT, in breach of the express terms of the APA.

143.     Mrs. Avery, Daniel, and Mark knew or should have known about the terms of the APA.

144.     The Non-Compete and Non-Solicitation provisions are material terms of the APA.

145.     Further, these terms are crucial to Plaintiffs' future success with Superior Travel.

146.     Regardless, Mrs. Avery, Daniel, and Mark worked in concert with Mr. Avery to breach these terms of the APA.

147.     Throughout all of their tortious conduct, Mrs. Avery, Daniel, and Mark acted without privilege or justification in interfering with Plaintiffs' contractual relationship with Mr. Avery.

148.    Mrs. Avery, Daniel, and Mark's interference with Plaintiffs'' relationship with Mr. Avery was willful and wanton and has been carried out with a specific intent to injure Plaintiffs in the conduct of their business.

149.    Plaintiffs have suffered and will continue to suffer, substantial and irreparable damage as a result of Mrs. Avery, Daniel, and Mark's tortious conduct.

## COUNT V
## MISAPPROPRIATION OF TRADE SECRETS
### (Against Defendants)

150.    Plaintiffs repeat and re-allege each of the foregoing paragraphs of the Complaint, inclusive, as if fully set forth at length herein.

151.    Defendants' conduct as set forth above constitutes a misappropriation of Superior Cruise's trade secrets within the meaning of the Uniform Trade Secrets Act, 12 Pa. C.S.A. § 5301, *et seq.* ("**UTSA**").

152.    Superior Cruise had developed confidential and proprietary business methods and techniques including detailed its client database and confidential business documents (the "**Confidential and Proprietary Information**").

153.    Pursuant to the APA, Mr. Taylor and Ms. Smith purchased "[a]ll intellectual property of Superior Cruise including but not limited to, **trade secrets** . . . ." *See* APA § 2.1(a) (emphasis supplied).

154.    The Confidential and Proprietary Information derives economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

155.     The Confidential and Proprietary Information is the subject of reasonable efforts to maintain its secrecy.

156.     Mr. Avery misappropriated and utilized, for his own benefit and to the detriment of Superior Cruise, the Confidential and Proprietary Information.

157.     Mr. Avery's conduct as set forth above has caused and if not enjoined will continue to cause Plaintiffs' irreparable harm through loss of goodwill and customer relationships

158.     The damages that Plaintiffs will sustain and the potential deception and harm to the consuming public cannot be ascertained, nor can such harm be compensated for in monetary damages.

159.     Plaintiffs have no adequate remedy at law in that the damages as set forth above, including loss of goodwill, interference with its customer relationships and lost profits cannot be compensated in monetary damages.

160.     Plaintiffs have suffered and will continue to suffer damages as a result of Mr. Avery's misappropriation of Superior Cruise's trade secrets, in an amount to be determined at trial.

161.     Mr. Avery' misappropriation of Superior Cruise's trade secrets is willful and malicious within the meaning of the UTSA.

162.     Plaintiffs are entitled to, among other relief, an award of preliminary injunctive relief until the time of trial, and permanently thereafter, as well as its costs of suit, including reasonable attorneys' fees, damages, to the extent calculable, and such other relief as this Court deems just and proper.

**COUNT VI**
**UNFAIR COMPETITION**
**(Against Defendants)**

163.     Plaintiffs repeat and re-allege each of the foregoing paragraphs of the Complaint, inclusive, as if fully set forth at length herein.

164.     In addition, or in the alternative, the Defendants have engaged in unfair competition with Plaintiffs.

165.     Unfairly, competing with Plaintiffs, Defendants have engaged in a conspiracy to unlawfully divert, and have succeeded in lawfully diverting, business away from Plaintiffs for the benefit of themselves and GOAT using Superior Cruise's customer relationships, relationship with IC's, good will, and confidential information and by, among other things, set forth above and incorporated herein, breaching, aiding or encouraging breaches of, and tortuously interfering with the APA, in order to compete unfairly with Plaintiffs in the highly competitive travel sales industry and secure, and continue to benefit from, an unfair competitive advantage not available to legitimate, lawful competitors in the industry.

166.     Defendants' unlawful acts are the direct and proximate cause of Plaintiffs' harm and damages.

167.     Should Defendants' unfair competition continue unabated, Plaintiffs will continue to suffer irreparable harm.

**COUNT VII**
**CONSPIRACY**
**(Against Defendants)**

168.     Plaintiffs repeat and re-allege each of the foregoing paragraphs of the Complaint, inclusive, as if fully set forth at length herein.

169.     In addition, or in the alternative, Mr. Avery, Mrs. Avery, Mark, and Daniel, in combination with each other, conspired to unlawfully divert, and have succeeded in diverting business away from Plaintiffs for the benefit of themselves and GOAT using Superior Cruise's customer relationships, relationship with IC's, good will, and confidential information and by, among other things, set forth above and incorporated herein, breaching, aiding or encouraging breaches of, and tortuously interfering with the APA, and/or engaging in unfair competition.

170.     Defendants coordinated unlawful acts are the direct and proximate cause of Plaintiffs' harm and damages.

171.     Should Defendants' conspiracy continued unabated, Plaintiffs will continue to suffer irreparable harm.

**WHEREFORE**, Plaintiffs demand judgment in its favor and against Defendants Fredrick Avery, Jennifer Avery, Daniel Richard, Mark Richard, and GOAT Vacations, LLC, as follows:

(a) A preliminary and permanent injunction enjoining Fredrick Avery, his agents, servants, employees and attorneys, and all others in active concert or participation with him, either directly or indirectly, for himself, or through, on behalf of, or in conjunction with any other person, persons, partnership or corporation, from:

(i) Using Superior Cruise's proprietary and confidential information, including but not limited to customer databases, forms, manuals, documents, procedures, operations methods, designs, marketing techniques, and other confidential business information;

(ii) Owning, maintaining, operating, engaging in, being employed by, financing, assisting, consulting, or having any interest in any travel agency either directly or indirectly for five years from November 15, 2019;

      (iii) Serving as an individual proprietor, partner, stockholder, director, officer, principal, broker, agent, employee, consultant or lender to any travel agency for five years from November 15, 2019;

      (iv) Attempting to solicit or divert business or customers to any individual or establishment in competition with Superior Cruise; and

      (v) Communicating, divulging, or using for the benefit of any person, persons, partnership, association or entity, any trade secrets, knowledge, business methods or techniques or knowhow of Superior Cruise; and

(b) An accounting by Defendants of the Gross Revenues generated by GOAT Vacations, LLC since its inception.

(c) Judgement against Fredrick Avery for compensatory, consequential, and incidental damages to Plaintiffs in an amount to be determined at trial for his breaches of the APA.

(d) Judgement against Jennifer Avery, Daniel Richard, and Mark Richard for compensatory, consequential, incidental, and punitive damages in an amount to be determined at trial for their willful and malicious conduct in tortuously interfering with Mr. Taylor and Ms. Smith's contractual relationship with Mr. Avery.

(e) Judgement against Frederick Avery, Jennifer Avery, Daniel Richard, and Mark Richard, and GOAT Vacations, LLC for compensatory, consequential, incidental, and punitive damages in an amount to be determined at trial for their willful and malicious conduct in misappropriating Plaintiffs' trade secrets.

(f) Judgement against Frederick Avery, Jennifer Avery, Daniel Richard, and Mark Richard, and GOAT Vacations, LLC for compensatory, consequential, incidental, and punitive damages in an amount to be determined at trial for their willful and malicious conduct in unfairly competing with Plaintiffs.

(g) Judgement against Frederick Avery, Jennifer Avery, Daniel Richard, and Mark Richard, and GOAT Vacations, LLC for compensatory, consequential, incidental, and punitive damages in an amount to be determined at trial for their willful and malicious conduct in conspiring together to unfairly compete with Plaintiffs.

(h) Pre-judgment and post-judgment interest, as permitted by law;

(i) Reasonable expenses, including attorney's fees and costs from Defendants, and other expenses reasonably and necessarily incurred in enforcing the APA, in

the event that Plaintiffs prevail in this action, pursuant to Section 10.2 of the APA; and

(j) Such other, additional and separate relief as the case may require and/or that the Court may deem appropriate, just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs respectfully request and demand a jury trial on all issues so triable.

Dated:  March 9, 2020                    Respectfully submitted,


<u>/s/ E. Ginnette Childs</u>
E. Ginnette Childs, Esq., Trial Counsel
Florida Bar No.:  0298130
Sara A. Brubaker, Esq.
Florida Bar No.:  105769
**AKERMAN LLP**
Post Office Box 231
Orlando, Florida 32802-0231
Phone:  (407) 423-4000
Fax:     (407) 843-6610
Email:  ginny.childs@akerman.com
Email:  sara.brubaker@akerman.com

and

Nicholas H. Pennington (*pro hac vice pending*)
**STEVENS & LEE, P.C.**
620 Freedom Business Center, Suite 200
King of Prussia, PA 19406
Phone:  (610) 205-6352
Fax:     (610) 371-7372
Email:  nhp@stevenslee.com

*Attorneys for Plaintiffs KROZ, LLC d/b/a Superior Cruise and Travel, Keith Taylor, and Rosalind Smith*

## VERIFICATION

I, Rosalind Smith, hereby verify that I am a member of KROZ, LLC, and as such am authorized to make this verification for and on behalf of Plaintiffs.  I have read the foregoing pleading and verify that all facts set forth therein are true and correct to the best of my knowledge, information, and belief.  I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Dated: 05 MAR 2020

ROSALIND SMITH

## **VERIFICATION**

I, Keith Taylor, hereby verify that I am a member of KROZ, LLC, and as such am authorized to make this verification for and on behalf of Plaintiffs. I have read the foregoing pleading and verify that all facts set forth therein are true and correct to the best of my knowledge, information, and belief. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Dated: 3-5-20

KEITH TAYLOR